[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action against the City of Norwalk to recover for injuries alleged to have been suffered in a fall on ice and snow on the evening of Sunday, March 14, 1993.
The plaintiff claims that he slipped on a ridge of snow separating a walkway from a parking lot owned and operated by the defendant. He alleges that the snow pile, being 12 inches to 14 inches high, was placed there by the defendant during its snow plowing operation in the parking lot. The plaintiff, his wife and another couple, had left a restaurant, Miche Mache, and the plaintiff was attempting to negotiate the snow bank to get from the walkway to the lot and to his car. Evidence as to whether the ridge of snow was actually located on the walkway or on the city lot was inconclusive.
On Saturday, March 13, 1993, there was a severe snow storm that continued into and ended during the morning of March 14th. There was an accumulation of some 10.6 inches on March 13 and another 0.2 inches on the 14th. The defendant plowed the parking lot (known as the Haviland Street lot) sometime on March 13 or March 14, leaving a ridge of snow between the lot and the walkway CT Page 7694 at the location in question.[1] The plaintiff had parked his car in the Haviland Street lot prior to visiting a nearby restaurant with his then wife and another couple. The group had no apparent trouble negotiating their way to the restaurant, since the path they had chosen was clear. Upon exiting the restaurant, some 45 minutes later, the other couple chose a different route than was used earlier, to return to the car. The plaintiff, some distance behind, followed his friends' path. As he arrived at a point in the walkway which was adjoining the ramp leading to the parking lot, he came upon a bank of snow some 12 inches to 14 inches high. Wearing boat shoes, he attempted to negotiate the obstacle by placing his right hand on a nearby light stanchion and his right foot on top of the snow bank. As he lifted his left foot to step over the mound he slipped and fell, suffering a severe ankle fracture. No one saw the fall. His wife, who had lingered behind at the restaurant, and his friends who had proceeded ahead of him to the car, helped him to the vehicle and drove him to the hospital where surgery was performed, being an open reduction and internal fixation of the right ankle. The plaintiff seeks to recover for his medical expenses, physical and emotional pain and suffering, permanent restriction of his ability to enjoy life's normal activities, and loss of earnings and of earning capacity.
This action was brought pursuant to C.G.S. § 13a-149.Lucas v. New Haven, 184 Conn. 205, 439 A.2d 949 (1981) laid down the conditions precedent to recover on such actions: ". . . The plaintiff must prove, by a fair preponderance of the evidence (1) that the highway was defective as claimed; (2) that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have known of that defect; (3) that the defendant, having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances to do so; (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence." Id., 207.
That the Haviland Street parking lot is treated by the defendant as part of a public street for purposes of maintenance is not disputed. There was little evidence as to the exact location of the boundary line between the lot and the adjoining sidewalk.[2]
However, the plaintiff has failed to prove by a preponderance CT Page 7695 of the evidence the facts necessary to establish the defendant's culpability under the statute. First of all, it is problematic whether or not there existed a "defect" of any kind. It is a stretch of the imagination to find that a ridge of snow, approximately a foot high, created between a parking lot and the adjoining sidewalk during or within hours of a severe snow storm in a town in New England constitutes a highway "defect". Nevertheless, treating it as a defect, the plaintiff has not proven the elements he must to fall within the purview of Lucas.
Supra, 184 Conn. 207. There is no evidence to suggest that the defendant knew of the "defect". It is true that the defendant placed the snow at the spot where the plaintiff fell, but there is no reason for the court to believe that the city knew, or should have known, that it constituted a defect, given the fact that the pile reached only a height of 12 inches to 14 inches, and that no complaints had been received by the city about the existence of a defect. It is not enough that a municipality know of conditions which might produce a defect; it must know, or reasonably should know, that a particular defect exists. NewBritain Trust Co. v. New York, N.H. HR Co., 145 Conn. 390, 393,143 A.2d 438 (1958); Pape v. Cox, 129 Conn. 256, 259, 28 A.2d 10
(1942); Cohen v. Hamden, 27 Conn. App. 487, 492, 607 A.2d 452
(1992).
A further condition of an injured plaintiff's recovery is that he must offer sufficient proof that, having actual or constructive knowledge of a particular defect, the defendant city failed to remedy it, having had a reasonable time under all the circumstances, to do so. Cohen v. Hamden, supra, 27 Conn. App. 492. "The standard of care to be applied in determining whether a municipality has had a reasonable opportunity to remedy a highway defect is the care which the ordinary prudent person under the circumstances would exercise. It was incumbent upon the plaintiff to establish that the defect had been there a sufficient length of time and was of such a dangerous character that the defendant by the exercise of reasonable care could and should have discovered it and remedied it. And proof of this fact must be definite and clear." Cohen v. Hamden, supra, 492 (Internal citations omitted) (internal quotation marks omitted).
"Many considerations are involved in the determination of municipal liability for highway defect, especially when they are claimed to be due to snow and ice. Some duty is imposed but, owing to the rigors of our winters, it is a limited one. It has been impossible to formulate a precise rule which would govern CT Page 7696 all cases. The general rule has been stated as follows: What the law requires . . ., and all that it requires, is the exercise of such efforts and the employment of such measure — directed to the end that their streets and walks be maintained in a reasonably safe condition, all the circumstances of the situation considered — as, in view of the circumstances and conditions, are in themselves reasonable . . . . The required efforts in the interest of safety are such only as reasonably might be expected to be exerted in view of all the many circumstances deserving of consideration, and the end sought for or attained need be only such as satisfies the test of reasonableness similarly applied. This saving feature of our rule, is too often overlooked.
In the determination of whether or not the defendant performed this duty of using reasonable care to keep its sidewalks reasonably safe, it is entitled to have its conduct judged by the way in which it met the whole problem." Bazinet v.Hartford, 135 Conn. 484, 487, 66 A.2d 117 (1949) (Internal citations omitted) (Internal quotation marks omitted).
In the case before the court, there was no evidence of when the snow plowing took place, and thus no indication of how long the snow had been in the subject location prior to the plaintiff's fall. There was evidence, that Norwalk has 240 miles of road, 26 schools, and many other priorities for snow plowing, including the police station, the train station, fire stations and Norwalk Hospital, among others. March 14, 1993 was a Sunday, and therefore schools were to open the next day. The defendant has 27 plowing routes and in the 1992-1993 fiscal year spent in excess of $807,500 on snow removal. The particular storm in question cost $119,000 in overtime. It should also be noted that if the defendant is to be charged with constructive notice of the obstacle, it should also be credited with constructive notice of the existence of an alternate route to and from the parking lot, to and from the walkway, a route in fact chosen by the plaintiff to enter the restaurant.
The court finds that the defendant used reasonable care in its efforts to keep its streets and public properties reasonably safe for use by the public. Further, the defendant acted reasonably when its conduct is judged by the way in which it met the whole problem created by the snow storm. See Bazinet v.Hartford, supra, 135 Conn. 487; Ritter v. Shelton, 105 Conn. 447,450-451, 135 A. 535 (1937). CT Page 7697
The final condition which the plaintiff fails to fulfill is proof that the "defect" was the sole proximate cause of his injuries and damages. On the day of the plaintiff's fall, his then wife, Debra Bliss, and another couple celebrated, somewhat early, St. Patrick's Day with Sunday afternoon dinner at the plaintiff's home. The group began drinking at approximately 1 p.m. The plaintiff consumed more than one vodka drink, and Debra Bliss testified that it was the plaintiff's pattern, when he drank, "to drink one after another". During the dinner, the plaintiff also consumed wine. The group continued to drink after dinner, and at some point in the afternoon the plaintiff left the house with his friends without Mrs. Bliss, and was gone for some 2 1/2 hours. Later, upon their return, they decided to go to Miche Mache restaurant, it then being between 7 and 8:00 p.m. They stayed at the restaurant approximately 45 minutes, during which time the plaintiff drank at least another vodka. They did not have dinner at Miche Mache.
At the hospital after the fall, the plaintiff, as noted by the hospital records, told staff that he had had six drinks. In the pre-anesthesia evaluation it was reported that he had had eight drinks; the ambulance technicians noted alcohol on his breath, and a nurse's interview contained the notation "had six drinks, intoxicated".
At the time of his fall the plaintiff was wearing boat shoes rather than snow boots. The ridge of snow on which he slipped was only 12 inches to 14 inches high and had been navigated successfully by his friends a few moments before, and presumably by his wife a few moments after. The plaintiff also had, of course, the opportunity not to attempt traversing the obstacle but to turn and to use the route he had found clear and safe when he entered Miche Mache some 45 minutes earlier.
The plaintiff has failed to prove, by a preponderance of the evidence, under all the circumstances, the negligence of the city of Norwalk, and the absence of his own.
Judgment may enter for the defendant with taxable costs.
D'ANDREA, J.